**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

JEROME A. SMITH, #322301,

        Petitioner,

v.                                        CIVIL ACTION NO. 2:05cv710

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

        Respondent.

**UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia.

**I. STATEMENT OF THE CASE**

**A. Background**

On July 9, 2002, Petitioner, Jerome A. Smith ("Smith"), was found guilty in a jury trial,[1] in the Circuit Court for the City of Portsmouth, Virginia ("Circuit Court"), of one (1) count of grand

_____

[1]White was represented at trial by Dianne G. Ringer, Esq. ("Ringer"). Smith hired Ringer to replace his court-appointed counsel, Gregory K. Matthews, Esq. ("Matthews"), who represented Smith for all pre-trial matters. Between the trial and sentencing hearing, Smith dismissed Ringer, after which Jeanette Smith, Esq., was appointed to represent Smith at sentencing.

larceny.[2]  Smith was sentenced to fifteen (15) years in prison, of
which five (5) years was suspended, as reflected in the Court's
Sentencing Order entered on September 23, 2002.[3]  On September 9,
2003, Smith filed a notice of appeal to the Court of Appeals of
Virginia ("Court of Appeals").[4]  On March 23, 2004, the Court of
Appeals reversed and annulled Smith's sentence and remanded the
case for re-sentencing.  Smith v. Commonwealth, No. 2320-02-1, 2004
Va. App. LEXIS 117 (Va. Ct. App. Mar. 23, 2004).

On April 16, 2004, Smith filed a notice of appeal to the

_____

[2]Smith was tried on four (4) counts: robbery, abduction, and
two (2) counts of use of a firearm in the commission of a felony.
The jury found him guilty of grand larceny, a lesser-included
offense of robbery, and not guilty on the other charges.

[3]The sentencing hearing took place on September 3, 2002.

[4]Smith was represented by Felipita Athanas, Esq., for his
direct appeals to the Court of Appeals and the Supreme Court of
Virginia.  The petition for appeal, filed on May 11, 2004, asserted
the following errors:
    (1) The trial court erred in admitting into evidence a photo
spread containing a "mug shot" of Smith because:  (1) the
Commonwealth failed to demonstrate a need for the introduction of
the photo spread; and (2) the "mug shot" contained in the photo
spread implied that Smith had a prior criminal history.
    (2) The trial court erred in permitting the jury to consider,
for purposes of sentencing, prior offenses for which there was no
final order of conviction.
    On March 18, 2003, the Court of Appeals entered an order
granting the petition as to the second error, but denying it as to
the first error.  In denying the appeal as to the first error, the
Court of Appeals stated that the photo spread was admissible to
prove Smith's identity as the perpetrator, and further stated that
the photographs themselves did not convey information from which
the jury could have concluded that Smith had a prior criminal
record.  Smith v. Commonwealth, No. 2320-02-1, slip op. at 2 (Va.
Ct. App. Mar. 18, 2003).  Smith requested the denial of this appeal
be reconsidered by a three-judge panel.  This panel denied the
request on October 9, 2003.

Supreme Court of Virginia.[5]  On September 13, 2004, the Supreme Court of Virginia refused the petition for appeal.  Record No. 040871.

On January 11, 2005, the Circuit Court held Smith's resentencing hearing before a new jury.[6]  Smith was sentenced to five (5) years in prison, as reflected in the Court's Sentencing Order entered on January 1, 2005.[7]

On April 18, 2005, Smith filed a pro se petition for a writ of habeas corpus in the Supreme Court of Virginia ("State Habeas Petition").[8]  On August 25, 2005, the court denied the writ.

---

[5]The petition for appeal, also filed on April 16, 2004, asserted the following error:
(1) The Court of Appeals erred in finding that the trial court properly admitted into evidence a photo spread containing a "mug shot" of Smith because:  (a) the Commonwealth failed to show a demonstrable need to introduce the photographs; (b) the photographs implied that Smith had a prior criminal record; and (c) the Court of Appeals erred in its application of Johnson v. Commonwealth, 2 Va. App. 447 (1996), to the facts of the case.

[6]For this hearing, Smith was represented by Ann Johns, Esq., and Amy Chudzinski, Esq.  During this hearing, the transcript from Smith's original trial was read into the record to allow the jury to consider this information in recommending a sentence.

[7]Smith waived his right to a pre-sentence report.  On February 7, 2005, Smith filed a notice of appeal to the Court of Appeals, but, according to the court records, Smith did not follow this notice with the filing of a petition for appeal.

[8]This petition contained essentially the following claims:
(a) Smith was denied due process in his conviction and sentencing by virtue of ineffective assistance of counsel, including his pre-trial counsel, trial counsel, and appellate counsel;
(b) Trial counsel was ineffective for failing to suppress Smith's two (2) confessions;
(c) Trial counsel was ineffective for failing to make a

Record No. 322301 ("<u>Smith I</u>").[9]

On November 21, 2005, while in the custody of the Virginia Department of Corrections at the Haynesville Correctional Center, Smith executed the instant federal petition for a writ of habeas

---

"Motion to Strike for Mistrial and Double Jeopardy";
    (d) Trial counsel was ineffective for failing to impeach the Commonwealth's witness using prior inconsistent statements;
    (e) The trial court erred in admitting into evidence a photo spread containing Smith's "mug shot";
    (f) The trial court erred in permitting the jury to consider for the purpose of sentencing, a prior offense for which there was no final conviction order;
    (g) The trial court erred in denying Smith's objection to the introduction of one (1) conviction order;
    (h) The Court of Appeals and Supreme Court of Virginia erred in finding that the trial court properly admitted into evidence a photo spread containing Smith's "mug shot"; and
    (i) The Court of Appeals and Supreme Court of Virginia misapplied <u>Johnson v. Commonwealth</u>, <u>supra</u>, to the facts of Smith's case.

[9]The court essentially held (using the same nomenclature, <u>see</u> <u>supra</u>, note 8):
    (a) This claim was "conclusional" because Smith did not specify how counsel was ineffective.
    (b) The claim as to the first confession failed to satisfy either prong of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and the claim as to the second confession was without merit because Smith was represented by counsel during his interrogation and "knowingly and voluntarily waived his <u>Miranda</u> rights."
    (c) The claim was without merit because counsel did make a motion to strike after the Commonwealth presented all of its evidence and renewed the motion after all of the evidence was presented.
    (d) The claim failed to satisfy either prong of <u>Strickland</u>.
    (e)-(g), (i) The claims were barred from habeas relief because they were raised on direct appeal.
    (h) The claim was barred because Smith was attempting to use the writ as a substitute for direct appeal, and because the claim had already been raised on appeal.

corpus pursuant to 28 U.S.C. § 2254 ("Federal Petition").[10]   The
Court conditionally filed this petition on December 6, 2005.   On
December 29, 2005, the Court entered an Order granting Smith's
motion to proceed in forma pauperis, and properly filing Smith's
petition.   On January 26, 2006, Respondent filed Respondent's
Motion to Dismiss and Rule 5 Answer accompanied by a supporting
brief and a Notice of Motion Pursuant to Local Rule 7(J).[11]   On

---

[10]Smith's Federal Petition was accompanied by a request to
proceed in forma pauperis; both documents were signed, but not
dated. On the federal petition, Smith indicated his intent to mail
it on November 21, 2005. The petition was received by the United
States District Court for the Eastern District of Virginia,
Richmond, on November 28, 2005, and was conditionally filed with
this Court on December 6, 2005. This Court requested Smith's
prisoner account report on December 14, 2005, and received that
report on December 22, 2005. On December 29, 2005, the Court
entered an Order granting Smith's request to proceed in forma
pauperis and ordered his petition to be filed.
     The Court notes that the United States Supreme Court
promulgated certain amendments to the Rules Governing Section 2254
Cases in the United States District Courts, which became effective
on December 1, 2004. As amended, Rule 3(d) adopts the prison
mailbox rule with regard to § 2254 petitions. Accordingly, the
Court recognizes the prison mailbox rule for federal habeas
petitions. In this case, as there is no evidence in the record to
the contrary, the Court will assume that Smith delivered his
federal habeas petition for mailing on the date indicated on his
petition, November 21, 2005. Further, the Court considers Smith's
petition as filed, for statute of limitations purposes, on that
date.
     The Court further notes that while Smith's petition was
pending, the name of Haynesville Correctional Center was changed to
Lawrenceville Correctional Center; Smith continues to be confined
at that location.

[11]The Court notes that Respondent's Notice of Motion
erroneously referred to the Local Rule 7(J), instead of Local Civil
Rule 7(K), but the Notice complied with the requirements of
Roseboro v. Garrison, 582 F.2d 309 (4th Cir. 1975). This included
advising Smith that he had twenty (20) days in which to file a

February 7, 2006, Smith filed his reply to Respondent's Motion to Dismiss.[12]

## B. Grounds Alleged

Smith now asserts in this Court that he is entitled to relief under 28 U.S.C. § 2254 for the reasons substantially as follows:

  (a)  Counsel was ineffective for failing to move to suppress Smith's first police interview because it was "unlawful," "no attorney [was] present," and "the evidence presented at trial was unlawful";

  (b)  Counsel was ineffective for failing to move to suppress Smith's second police interview because Smith was "coerced and influenced to waive his Miranda [sic] Rights and cooperate with the Government under false pretenses";[13]

  (c)  Trial counsel was ineffective for failing to make a "Motion to Strike for Mistrial and Double Jeopardy"; and

---

response to the Motion to Dismiss.

[12]The Court received this response on February 9, 2006. Smith's response consisted of two (2) documents: one (1) entitled "Petitioner's Brief in Opposition to Respondent' [sic] Motion to Dismiss" and one (1) entitled "Brief in Opposition to Support the Motion to Dismiss." Because this report and recommendation does not reference the first of these documents, the Court will use the term "Smith's Response" to refer to the second pleading.

[13]The Court notes that on the federal petition form, Smith did not list each of his grounds, but entered a statement to "see attachment." Smith listed his claims on a two-page document, labeled "Facts," which was attached to Smith's petition. On this document, Smith grouped as claims (a) and (b) his ineffective assistance of counsel claims against Matthews and Ringer relating to two (2) interviews Smith gave to police. Federal Petition, Facts, at 1-2. The Court construes Smith to argue that claim (a) relates to the first interview, and encompasses both counsels' performances, and claim (b) relates to the second interview, and also encompasses both counsels' performance.

(d)  Trial counsel was ineffective for failing to impeach the Commonwealth's witness using prior inconsistent statements.

## III.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court FINDS that Smith's claims, as stated in his federal habeas petition, are exhausted, but one (1) subclaim of claim (c) is procedurally defaulted, requiring review of claims (a), (b), and (d), and the remaining subclaims of claim (c) on the merits.[14]

### A.  Exhaustion

In order for this Court to address the merits of this habeas petition, all of Smith's claims must be exhausted.  See 28 U.S.C. § 2264(a); 28 U.S.C. § 2254(b).  The exhaustion requirement is satisfied when "allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court."  Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd 996 F.2d 1560 (4th Cir. 1993).  Exhaustion may be accomplished either on direct appeal or in post-conviction proceedings.  See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) (citing Brown v. Allen, 344 U.S. 443, 447 (1953)); see also Skipper

---

[14]The Court notes that Respondent has not addressed whether Smith's petition was timely filed.  The Court further notes that Smith filed his federal petition, for statute of limitations purposes, on November 21, 2005, which was within one (1) year of his resentencing hearing, on January 11, 2005.  Accordingly, his petition must have been filed within one (1) year of his conviction becoming final; because Smith did not file an appeal after this hearing, however, the Court declines to determine when his conviction actually became final under state law, or if Smith is eligible for any tolling due to his filing of a state habeas petition.

v. French, 130 F.3d 603, 610 n.4 (4th Cir. 1997).  In order for a claim to be considered exhausted, it must be "fairly presented to the state courts," which means "that both the operative facts and the controlling legal principles must be presented to the state court."  Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997) (internal quotations omitted).  "[T]he exhaustion requirement for claims not fairly presented to the state's highest court is technically met when . . . a state procedural rule would bar consideration if the claim was later presented to the state court," Matthews, 105 F.3d at 911 (citations omitted); such claims are treated as procedurally defaulted and barred from this Court's review.  Clagett v. Angelone, 209 F.3d 370, 378-79 (4th Cir. 2000).

Respondent concedes that Smith raised all four (4) claims in the instant petition to the Supreme Court of Virginia in his state habeas petition, but also asserts that Smith has "raised new grounds in support of his claims (a)(b) [sic] and (c)."  Brief in Support of Motion to Dismiss and Rule 5 Answer, at 4 ("Respondent's Brief").[15]  Specifically, Respondent asserts that, for claim (b), Smith has added an allegation that counsel was ineffective for failing to suppress his confession because Smith "was coerced into making it as he was told that he would not be prosecuted for his

---

[15]The Court notes that Respondent has construed claims (a) and (b) as a single claim, "(a)(b)," asserting ineffective assistance of counsel by trial and appellate counsel.  See Respondent's Brief, at 3.

role in the 'fake' robbery";[16] Respondent further asserts that
because Smith would be barred from raising this claim in state
court pursuant to Va. Code Ann. § 8.01-654(B)(2), the claim is
"simultaneously exhausted and defaulted." Id. at 4, 8 n.1. The
Court notes that Smith stated in his state habeas petition,
"defense counsel . . . Mathews [sic] influenced petitioner to allow
a second custodial interrogation which was inherently coercive in
a psychological sense under false pretenses that the petitioner
would not be prosecuted for the role he played in a fake robbery."
State Habeas Petition, at 9. Accordingly, this issue was fairly
presented to the Supreme Court of Virginia. The Court notes
further that although the Supreme Court of Virginia viewed Smith's
claim (a) as a general ineffective assistance of counsel claim, the
court broadly construed claim (b) as containing all of the grounds
that this Court has construed as constituting claims (a) and (b).
Smith I, at 1-2.

_____

[16]Smith was charged with robbery of a Walgreen's store. In his
second police statement, Smith stated that he had entered into an
agreement with the store's day manager, Samuel Mills ("Mills"), to
stage a robbery (with Mills' aid) and take money during the shift
change. Smith stated that he had a gun in his possession to make
it appear that he coerced Mills to enter the security codes that
enabled Smith to enter the manager's office, where Smith took the
night shift cash receipts from the night manager, Hugh Arrington
("Arrington"). Even though Smith ultimately did admit to his role
in taking money from the store, in the instant petition, Smith
referred to his actions as constituting a "fake robbery." As
discussed, infra, Smith claims that it was his belief that if he
made a statement to police regarding Mills' involvement in the
theft, then all of the charges against Smith would be dismissed.

The Court notes that within claim (c), Smith appears to assert four (4) subclaims: (1) counsel was ineffective for failing to make a motion to strike charges due to insufficient evidence; (2) counsel was ineffective for failing to make a motion for mistrial (or request a curative instruction); (3) counsel was ineffective for failing to notify the trial court of a double-jeopardy violation; and (4) counsel was ineffective for requesting a jury instruction for the lesser-included offense of grand larceny. Respondent asserts that Smith did not "squarely raise" the jury instruction argument (subclaim (c)(4)) in his state habeas petition. Respondent's Brief, at 10. Although Smith did assert a "double jeopardy" violation as part of claim (c) in his state habeas petition, State Habeas Petition, at 27-28, he did not raise the "operative fact" that his counsel allegedly caused the violation, which forms the basis for subclaim (c)(4). Further, although Smith apparently did not learn that counsel requested the jury instruction on the lesser-included charge until counsel responded to a Bar complaint filed by Smith, Federal Petition, Facts of Claim C, at 2-3, Smith received this response in November, 2002, id., well before he filed his state habeas petition in April, 2005. Accordingly, the Court considers subclaim (c)(4) to be procedurally defaulted and exhausted, because Smith is now barred from presenting it to the Supreme Court of Virginia by Va. Code Ann. §8.01-654(B)(2).

Based on the foregoing, subclaims (c)(1), (c)(2), and (c)(3) were "fairly presented" to the Supreme Court of Virginia, so they are properly exhausted and will be considered on the merits. Claim (d) in the instant petition is the same as that presented in the state habeas petition; consequently, it was properly exhausted. Accordingly, this Court FINDS that all of Smith's claims were exhausted and will address all but subclaim (c)(4), which was found to be procedurally defaulted, on the merits.

## B.  **Merits**

The Court now considers Smith's claims on the merits.  A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).  In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000).  See also Bell v. Jarvis, 236 F.3d 149, 157 (4th Cir. 2000) (recognizing that, for claims adjudicated on the merits by the state court, the federal court "is

11

limited by the deferential standard of review set forth in §
2254(d), as interpreted by the Supreme Court in Williams[].")
Consequently, "state-court judgments must be upheld unless, after
the closest examination of the state-court judgment, a federal
court is firmly convinced that a federal constitutional right has
been violated." Williams, 529 U.S. at 387. Moreover, "[a] federal
habeas court may not issue the writ simply because that court
concludes in its independent judgment that the relevant state-court
decision applied clearly established federal law erroneously or
incorrectly.  Rather, that application must also be [objectively]
unreasonable."  Id. at 411.  In deference to the state court's
decision, this Court may not grant relief unless it determines that
decision on the merits was "legally or factually unreasonable."
See Bell, 236 F.3d at 163 (quoting Aycox v. Lytle, 196 F.3d 1174,
1178 (10th Cir. 1999)).

Smith asserts that because the Supreme Court of Virginia's
opinion is a "summary state court opinion that fails to articulate
its analysis of the [f]ederal constitutional claim (S) [sic]," this
Court is not required to defer to that opinion.  Smith's Response,
at 7 (citing Royal v. Netherland, 4 F. Supp. 2d 540, 555 (E.D. Va.
1998).  Because the Supreme Court of Virginia's opinion did
articulate the reasoning behind the court's denial of Smith's
petition, it was not a summary opinion, and consequently, the
deferential standard of review set forth in 28 U.S.C. § 2244(d),

not the Court's own review of the record as set forth in <u>Royal</u>, is appropriate for the instant petition.  <u>See</u> <u>Royal</u>, 4 F. Supp. 2d at 555-56.

### 1. Ineffective Assistance of Counsel Standard

All of Smith's claims assert ineffective assistance of counsel.  The controlling standard for such claims is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  As such, to grant Smith relief on his claims, this Court must find that the state court's dismissal of those claims involved an unreasonable application of <u>Strickland</u>.  Under <u>Strickland</u>, the state court was required to subject Smith's claim to a two-prong test in which the petitioner must prove both ineffective assistance (incompetence) and prejudice.  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986).  To grant relief, the state court had to find: (1) Smith's lawyer's performance fell below the range of competence demanded of lawyers in criminal cases, <u>Strickland</u>, 466 U.S. at 690; and (2) there is a reasonable probability that, but for the deficient performance by counsel, the ultimate result would have been different, <u>id.</u> at 694.

When assessing counsel's performance under <u>Strickland</u>'s first prong, the Supreme Court has stressed that the constitutional guarantee of effective assistance of counsel seeks only to "ensure that criminal defendants receive a fair trial," and not to "improve the quality of legal representation."  <u>Id.</u> at 689.  The reviewing court must "indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance." Id.  In order to prevail, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  Accordingly, the reviewing court must grant a "heavy measure of deference to counsel's judgments," and, in doing so, may only evaluate such performance from counsel's perspective at the time of the alleged error and in light of all the circumstances.  Id. at 690-91; Kimmelman, 477 U.S. at 381.  Additionally, a reviewing court generally should assess counsel's overall performance throughout the case, Kimmelman, 477 U.S. at 386, and avoid "Monday morning quarterbacking." Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991); see also Strickland, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .").

The second prong of the Strickland analysis presents an equally rigorous standard.  To affirmatively prove prejudice, a petitioner must do more than merely demonstrate that his attorney's error had "some conceivable effect" on the outcome of the case. Strickland, 466 U.S. at 693.  Rather, the petitioner must demonstrate "a reasonable probability[17] that, but for counsel's

---

[17]The Court notes that this standard is not so high as to require that a petitioner "show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland,

unprofessional errors, the result of the proceeding would have been different." Id. at 694.  As with the first prong, the reviewing court must consider the totality of the evidence before it in conducting the prejudice inquiry.  Id. at 695.

Additionally, a reviewing court need not consider the two prongs of the Strickland analysis in sequential order.  Strickland, 466 U.S. at 697.  The court need not even address both prongs if the petitioner fails to make a sufficient showing on one.   Id. When evaluating an ineffective assistance of counsel claim, a court should first apply whichever prong more quickly disposes of the respective claim.  See id.

## 2.  Claim (a)

In claim (a), Smith asserts that Matthews and Ringer were ineffective for failing to suppress the first of two (2) "confessions" Smith made to police.[18]  Federal Petition, Facts, at 1.  As grounds for suppression of this first "confession," Smith asserted his arrest was unlawful.  Id. at 1.  The Supreme Court of Virginia held that Smith's claim regarding his first "confession" failed to satisfy either prong of Strickland, and Smith did not

_____

466 U.S. at 693-94.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

[18]The Court notes that Smith agreed to two (2) separate police interviews, during which he made statements that he has now characterized as constituting confessions.  The Court has determined, see infra, that the statements made during the first interview were not actually confessions as Smith has alleged.

show how his arrest was illegal.  <u>Smith I</u>, at 2.

Smith asserts that his arrest was illegal because it was based solely on two (2) identifications made by Arrington, the victim of the alleged robbery.  Federal Petition, Facts, at 1.  Smith asserts that Arrington identified Smith and another individual pictured in a six-photograph photo spread as potential suspects, and this identification was followed by a "suggestive" in-court identification during Smith's preliminary hearing.  Federal Petition, Facts, at 1.  The record does not support this assertion; Arrington selected Smith and the other individual from the photo spread <u>after</u> Mills stated the perpetrator was Smith, and then identified Smith from a similar photo spread.  State Habeas Petition, Exhibit A, Investigative Narrative [sic],at 1-2.  Further, both Mills' and Arrington's identifications from the photo spread were presented to a Grand Jury, which indicted Smith, and Smith was arrested pursuant to the associated warrants.

Smith also states that his first "confession" was "a recorded statement from [Smith] in the form of an interrogation without counsel being present." Federal Petition, Brief, at 1.  The record contains a transcript of this statement, which confirms that counsel was not present; however, Smith was advised of his right to counsel as part of a <u>Miranda</u> warning, he initialed and signed a statement acknowledging those rights, and he proceeded to answer questions.  Transcript, Jerome Smith's Unedited Statement, Dec. 19,

16

2001 ("First Police Interview").   Additionally, Smith explicitly told the interviewing detectives, "As [sic] me some question and I'll talk to you."  First Police Interview, at 1.  Nowhere in the statement did Smith request a lawyer, and Smith has not asserted in the instant petition that he did so.  See id. at 1-24.  Further, the record reflects that throughout the statement, Smith denied any involvement in the robbery, claiming he was at home at the time, and asserting that other individuals were responsible.  See id. at 2-24.  Accordingly, there was no "confession" to suppress, and no violation of Smith's right to counsel during the interview.  In any event, this statement was not introduced during Smith's trial.

In support of this claim, Smith cites United States v. Wade, 388 U.S. 218, 237-39 (1967).  This case considered the admissibility of "post-indictment lineups" conducted in the absence of the accused's attorney.  Wade, 388 U.S. 219-220.  Smith was identified pre-indictment by Mills and Arrington using a photo spread, and Smith has not asserted that photo spread was improper.  Further, Smith's post-indictment identification, by Arrington at the preliminary hearing, was in the presence of counsel.  Accordingly, the Court finds that Wade has no relevancy to Smith's claims that his first interview with the police should have been suppressed.

As such, Smith has failed to show how the Supreme Court of Virginia's result that counsel was not ineffective in relation to

this first "confession" was either legally or factually unreasonable. Accordingly, this Court RECOMMENDS that claim (a) be DENIED.

### 3. Claim (b)

The court now considers claim (b), in which Smith asserts that counsel was ineffective for not seeking to have the confession given at his second police interview suppressed at trial. Federal Petition, Facts, at 1-2. Smith asserts that he only gave this second interview because he believed that if he cooperated with the police, all the charges against him would be dismissed. See id. The Supreme Court of Virginia held that this claim was without merit because the interview was preceded by a Miranda warning and counsel was present; that court did not complete a Strickland analysis for this portion of the claim. Smith I, at 2-3.

Smith asserts that counsel should have moved to suppress this confession because Smith "was coerced and influenced to waive his Miranda [sic] Rights and cooperate with the Government under false pretenses that [Smith] would not be prosecuted for the role he played in the alleged, fake robbery,[19] when given [such] an implied promise by" Matthews and the interviewing detectives during the interview. Federal Petition, Facts, at 2. The transcript confirms that Smith was read his Miranda warning, and his counsel was present and fully participated in the interview. Transcript, Jan.

---

[19]See supra, note 16.

18

25, 2002, at 3-4 ("Second Police Interview").  Before allowing the
police to interview Smith, Matthews asked the police to confirm
that they were offering "to drop [one of] the use of a firearm
[charges] and the abduction" charge, "leaving [Smith] with charges
of robbery[,] use of a firearm[,] and possession[20] of [a] firearm
after [being] convicted [of a felony]."  Second Police Interview,
at 4-7.  Matthews then asked of the police, "[T]hat is in return
for [Smith's] cooperation and truthful testimony in cases against
. . . Samuel Mills and maybe others ok?," to which the police
replied, "Correct."  Id. at 8.  Smith then acknowledged, by
expressing dissatisfaction with the offered agreement, that he was
still subject to three (3) charges.  Id. at 9.  The police also
emphasized that "this [offer] is as good as it's gonna [sic] get
for [Smith]."  Id. at 10.  Both the police and Matthews then
advised Smith that he did not have to accept the offered agreement,
but could go to trial on all of the charges.  Id. at 11-12.  The
only other offer made to Smith during this interview was that if he
"cooperate[d] with the[] detectives, . . . they [would] put in a
good word for [Smith] at sentencing."  Id. at 18.  After these
preliminaries, Smith agreed to talk, but asked for a break to
consult with Matthews, id. at 19; after this break, Smith again
agreed to cooperate with the police and began providing information
on the alleged robbery.  Id. at 22.  Later in the interview, one of

---

[20]This possession charge was later nolle processed.

the detectives reminded Smith that he would need to testify against Mills. Id. at 31. In response, Smith stated that he had not been told he needed to testify. Id. at 31-32. After this point, Smith was asked if anyone else was involved in the robbery, to which he replied negatively, and the interview ceased because the police had no more questions. Id. at 35-38. Significantly, nowhere in this statement did the police offer not to use Smith's statement at his own trial.[21] The Court finds based on this transcript that Smith either understood that the police were only offering to dismiss two (2) charges against him in exchange for his testimony against Mills, or at least Smith gave his counsel no indication until near the end of the interview that he did not understand that he would be required to testify against Mills. Additionally, throughout the interview, counsel made several efforts to ensure Smith and the police understood and were in agreement on the specifics of what the police were offering Smith in exchange for his cooperation and further testimony. The Court finds no merit to Smith's assertion that his confession was coerced or was the result of implied promises to drop all of the charges against him.

---

[21]Because the police only offered to dismiss two (2) charges, and made no promise not to use the interview at trial, counsel could not have reasonably done more on Smith's behalf than to request the abduction and use of a firearm charges be dropped. Because Smith was found "not guilty" of those charges, he has failed to show any prejudice, even assuming, arguendo, Smith fulfilled his part of the agreement with the police and counsel should have made such a motion.

In support of his contention that this interview should have been suppressed at trial, Smith has cited a number of cases that the Court now considers.  First, Smith cites Bram v. United States, 168 U.S. 532 (1897) for the proposition that the exclusionary rule prevents admission of evidence obtained in violation of the Fourth, Fifth, and Sixth Amendments.  Although the Court concurs that this is the purpose the exclusionary rule, the Court notes that the exclusionary rule was not developed in Bram; further, the United States Supreme Court has determined that "under current precedent," Bram no longer "state[s] the standard for determining the voluntariness of a confession," Arizona v. Fulminante, 499 U.S. 279, 285 (1991), and is, therefore, not helpful to Smith's showing of a Fifth Amendment violation.  Smith also cites Wade, 388 U.S. at 237-39, for the same proposition as Bram.  As discussed, supra, Wade addressed the admissibility of post-indictment suspect identifications; because this claim relates to Smith's police interview and not to his identification, the Court finds that Wade is not relevant to this claim.

Smith next cites three (3) Virginia cases.  The first, Jenkins v. Commonwealth, 244 Va. 445 (1992), addresses the voluntariness of a defendant's various confessions; the primary federal law relied on in that case was that a

> defendant's waiver of his Miranda rights is
> valid when the waiver is made knowingly,
> voluntarily, and intelligently. . . . The test
> for voluntariness is whether the statement is

> the "product of an essentially free and
> unconstrained choice by its maker," or whether
> the maker's will "has been overborne and his
> capacity for self-determination critically
> impaired."

Jenkins, 244 Va. at 453-54 (quoting Culombe v. Connecticut, 367
U.S. 568, 602 (1961)).  As discussed, supra, the transcript of
Smith's interview shows that his counsel made numerous efforts to
ensure that Smith understood the agreement that was offered and its
effect on his potential sentence; consequently, Smith has not
established that his will was "overborne" or that "his capacity for
self-determination [was] critically impaired."

The second Virginia case cited by Smith, Blain v.
Commonwealth, 7 Va. App. 10 (Ct. App. 1988), assessed whether a
defendant's statements were admissible even though they were not
preceded by Miranda warnings; that case is not applicable to
Smith's statements because Smith's statements were preceded by
Miranda warnings.

Smith cites Kauffman v. Commonwealth, 8 Va. App. 400, a third
Virginia case, apparently for the proposition that "[i]f the
prosecution intentionally leads the accused to hope and believe
that he will not be charged if he confesses and testifies against
others, the confession is inadmissible."  Federal Petition,
Principle [sic] of Law and Authorities, at 2.  The defendant in
Kauffman was not asked to testify against others in exchange for
his confession, and the determination of whether that defendant's

confession was "voluntary" was limited to analysis of the psychological impact of the recent death of the defendant's daughter. <u>Kauffman</u>, 8 Va. App. at 405. Accordingly, this case is also not relevant to determining if Smith's confession was voluntary, and does not support Smith's assertion that his confession was inadmissible.

Smith next avers that the "interrogation tactics" used during his police interview were "analogous to those utilized in <u>United States v. Tingle</u>, 658 F.2d 1332 (9th Cir. 1981)." Federal Petition, Principle [sic] of Law and Authorities, at 2. In <u>Tingle</u>, the defendant was threatened with not seeing her daughter "for a while," and that all of the statements made to induce the defendant to confess, taken together, were intended to induce "fear." <u>Tingle</u>, 658 F.2d at 1336. In contrast, Smith was not threatened with isolation from his family members if he did not confess. Like the defendant in <u>Tingle</u>, Smith was advised of the sentences he was facing, <u>see</u> <u>Tingle</u>, 658 F.2d at 1336; however, in <u>Tingle</u>, the defendant was threatened with the maximum penalties, <u>id.</u>, whereas Smith was advised as to the minimum sentences he faced with only three (3) charges (if the other charges were dropped) versus the minimum sentences on <u>all</u> charges if he did not agree to testify against Mills. <u>See</u> Second Police Interview, at 13-14. Because Smith's counsel was actively involved in providing him the sentencing advice during the interview, Smith's counsel apparently

23

intended to ensure Smith was fully informed of the consequences of accepting or refusing the offered agreement; counsel's sentencing advice did not appear intended to induce the type of fear at issue in <u>Tingle</u>.

Smith next cites <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), for the proposition that Smith "was under the impression and 'state of mind' that if he [had to] testify [sic] against Mills[,] he would be immune from prosecution as part of the promise when making the postwarning incriminating statement." Federal Petition, Principle [sic] of Law and Authorities, at 2. Smith added that his confession during the second interview should be "excluded from evidence under the doctrine known by the metaphor of the 'fruit of the poisonous tree.'" <u>Id.</u> (citing <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963)). In <u>Seibert</u>, the Supreme Court considered a police practice in which a suspect was induced to confess with no <u>Miranda</u> warning, then given a <u>Miranda</u> warning and questioned on the same facts as in the confession. <u>Seibert</u>, 542 U.S. at 604. Smith has not asserted, and the record does not show, any such police tactics. Smith was given a <u>Miranda</u> warning <u>before</u> both of his police interviews, and even though counsel was not requested or present during the first interview, Smith did not provide any information that could be construed as a confession. <u>See</u> First Police Interview; Second Police Interview. Consequently, Smith has not shown that his second confession was a "fruit of the poisonous

24

tree," warranting suppression.

Next, Smith cites <u>United States v. Cain</u>, 155 F.3d 840 (7th Cir. 1998), for the proposition that Smith

> ha[d] a Constitutional right prior to placement on the withness [sic] stand to preserve the pretrial issue which the petitioner wishes [sic] to preserve for review or has demonstrated that a decision on one of those issues will have dispose [sic] of the case and rendered him not having to be placed on the stand in violation of his Fifth Amendment right ... by suppressing essential evidence.

Federal Petition, Principle [sic] of Law and Authorities, at 2.  In <u>Cain</u>, the court addressed whether a defendant's plea agreement included a waiver preventing the defendant from appealing a purported Fourth Amendment violation.  <u>Cain</u>, 155 F.3d at 842.  Such a provision does not apply to Smith's case because he went to trial and had an opportunity to preserve issues on the record.  The Court notes that prior to the trial, Smith was questioned on the record to ensure his "not guilty" pleas were voluntary.  Transcript, <u>Commonwealth v. Smith</u>, No. 02-208, slip op. at 8-11 (Cir. Ct. July 9, 2002) ("Trial Transcript").  As part of this colloquy, Smith was asked, "Do you have any complaints you would like to make against anybody involved in the case?  That could be the Police Department, the Sheriff's Department, your lawyer, the Prosecutor, including me the judge."  Trial Transcript, at 10-11.  In response, Smith stated, "Not at present, no."  <u>Id.</u> at 11.  Accordingly, even if <u>Cain</u> entitled Smith to preserve issues for appeal on the record,

Smith declined to do so.

In the instant petition, Smith also cites case law regarding the ineffective-assistance-of-counsel standard, which the Court has already discussed <u>supra</u>. Additionally, in his response to Respondent's Motion to Dismiss, Smith also references <u>White v. Godinez</u>, 301 F.3d 796 (7th Cir. 2002), for the proposition that counsel was ineffective for "fail[ing] to investigate evidence for the defense." Smith's Response, at 4. In <u>White</u>, counsel was found to be ineffective because counsel did not meet sufficiently with the defendant and failed to call the defendant's alleged accomplice as a witness, and this ineffectiveness was found to be sufficient to influence the outcome of the trial. <u>White</u>, 301 F.3d at 798. Smith has not asserted that counsel did not sufficiently meet with him, and according to Ringer's affidavit, she consulted with Smith's prior counsel and the detectives who interviewed Smith, and was convinced after that investigation that Smith had not been coerced into making the statement. Federal Petition, Respondent's Exhibit A,[22] at 2. Consequently, the circumstances of Smith's case are not comparable to those found in <u>White</u> to constitute ineffective assistance of counsel.

---

[22]Smith has attached exhibits to the instant petition, which are labeled and referenced as Respondent's Exhibits. Apparently, these exhibits were attached to Respondent's response to Smith's state habeas petition. Because Smith has included additional exhibits with the labeling nomenclature, the Court will continue to reference these exhibits as "Federal Petition, Respondent's Exhibits."

Therefore, Smith has not shown that the Supreme Court of Virginia's determination that Smith "knowingly and voluntarily waived his <u>Miranda</u> rights," prior to answering questions during his second police interview was either factually or legally unreasonable. As such, this Court RECOMMENDS that claim (b) be DENIED.

### 4. Claim (c)

The Court now considers claim (c), whether trial counsel was ineffective for "failure to [make a] motion to strike for Mistrial and Double Jeopardy." Federal Petition, Facts, at 2. The Supreme Court of Virginia held that this claim was "without merit," because "counsel made a motion to strike after the Commonwealth presented all of its evidence and again after all evidence was presented." <u>Smith I</u>, at 3. The Court notes that the Supreme Court of Virginia did not address Smith's other subclaims, namely, that counsel should have made a motion for mistrial or challenged the verdict as a violation of double jeopardy, which were fairly presented in Smith's state habeas petition. As such, this Court must conduct its own <u>de novo</u> review of the controlling facts and applicable law of those subclaims. <u>See</u> <u>Weeks v. Angelone</u>, 176 F.3d 249, 258 (4th Cir. 1999) (where a claim properly presented to a state court was not adjudicated on the merits, the standard of review is <u>de novo</u> review of questions of law and mixed questions of law and fact, instead of the deferential review prescribed in § 2254(d)).

The Court first notes that Smith has provided no support for the "motion to strike" subclaim.  Accordingly, the Court finds Smith has not shown that the Supreme Court of Virginia's conclusion that this portion of claim (c) was without merit was legally or factually unreasonable.

The Court next considers Smith's support for the "motion for mistrial" subclaim.  The Court notes that the only support for this claim is Smith's assertion that he was entitled to a motion for mistrial or curative instruction relating to the "circumstantial evidence" instruction.  Federal Petition, Conclusion, at 8.  The trial transcript indicates that the jury was given instructions to consult during deliberations, Trial Transcript, at 188, but these instructions apparently were not read aloud in court.  The Circuit Court record contains eleven (11) instructions that were apparently given to the jury.  None of these instructions define the term "circumstantial evidence" or use that term in any manner.  Instruction #8, which references how to assign credibility to witnesses states, "From these things and all other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly."  Accordingly, the Court finds no merit to Smith's assertion that a "circumstantial evidence," instruction was given; therefore, there is also no merit to Smith's subclaim that counsel was ineffective for not making a motion for mistrial, or requesting a curative instruction, in regard to such

an instruction.

The Court next considers Smith's support for the "double jeopardy" violation subclaim.  Smith was charged with "robbery," and found "not guilty" of that charge.  During trial, Smith's counsel moved to have the jury instructed on the lesser-included offense of "grand larceny," of which Smith was found "guilty." Even though Smith was not convicted of both "robbery" and "grand larceny," he apparently asserts there was a double-jeopardy violation, simply because the jury <u>considered</u> both the robbery charge and the lesser-included offense.  Smith further asserts that counsel should have brought this to the trial court's attention.

As support for Smith's claim that counsel should have made a claim of a double-jeopardy violation to the trial court, Smith cites several Virginia cases. His first case, <u>Commonwealth v. Washington</u>, 263 Va. 298 (2002), is apparently cited for the general proposition that "no person should 'be subject for the same offense to be twice out in jeopardy of life or limb.'" Federal Petition, at 4.  In <u>Washington</u>, the court considered whether a defendant waived his double-jeopardy protections by not objecting to the declaration of a mistrial after it was determined there were an insufficient number of jurors available for trial, <u>Washington</u>, 263 Va. at 300; because Smith's assertion of a double-jeopardy violation relates to the substance of his charges, and not to how Smith's trial was conducted, this case is not relevant to Smith's claim.

29

Smith next cites <u>Martin v. Commonwealth</u>, 221 Va. 720, 722 (1981), for the proposition that the double-jeopardy clause of the United States Constitution "prevent[s] prosecution under successive indictments'when [sic] (1) the two offenses involved are identical[;] (2) the former offense is lesser-included in the subsequent offense; and (3) <u>the subsequent offense is lesser included in the former offense</u>." Federal Petition, Principle [sic] of Law and Authorities, at 4 (emphasis in original). In <u>Martin</u>, the defendant was convicted of both robbery and grand larceny, and he asserted a double-jeopardy violation because grand larceny is a lesser-included offense of robbery. <u>Martin</u>, 221 Va. at 721. The court found there was no double-jeopardy violation because the charges were based on "distinct and separate acts." <u>Id.</u> at 726. <u>Martin</u> is relevant to determining there was <u>no</u> double-jeopardy violation in Smith's case; like Smith, the defendant in <u>Martin</u> was indicted on one charge (grand larceny), but convicted on a lesser-included offense (petit larceny). <u>Id.</u> at 721. The defendant must be convicted of <u>both</u> charges based on the same acts for there to be a double-jeopardy violation, <u>see id.</u> at 722, and Smith was not convicted of both robbery and grand larceny.

Smith also references <u>Coleman v. Commonwealth</u>, 261 Va. 196, 199 (2001), for his double-jeopardy claim. Federal Petition, Principle [sic] of Law and Authorities, at 5. In <u>Coleman</u>, the court considered whether the defendant's convictions for malicious

wounding and attempted murder violated the double-jeopardy clause. Coleman, 261 Va. at 198.  The federal double-jeopardy law cited in that case affirmed that a person could not be prosecuted for the same offense after an acquittal or conviction for that offense, nor could a person be given multiple punishments for the same offense. Id. at 199-200 (citing Illinois v. Vitale, 447 U.S. 410, 415 (1980); Brown v. Ohio, 432 U.S. 161, 169-70 (1977)).  Because Smith was only convicted of one (1) offense, and was only subject to one (1) trial, there was no such double-jeopardy violation in his case.

Finally, Smith cites Jordan v. Commonwealth, 2 Va. App. 590 (Ct. App. 1986), for the proposition addressed supra, that "double jeopardy protection prevents multiple punishments for the same offense in a single trial."  Federal Petition, Principle [sic] of Law and Authorities, at 5.  Unlike the defendant in Jordan, who was convicted of two (2) counts of robbery, Jordan, 2 Va. App. at 592, Smith was convicted of only one (1) of the charges.  Consequently, he cannot claim he is being subject to multiple punishments for the same offense.  Because Smith has not established that there was a violation of double jeopardy at his trial, his claim that counsel was ineffective for failing to raise such an issue with the court is without merit.  Smith has failed to satisfy either of the Strickland prongs for this subclaim.

Having found that Smith failed to show the Supreme Court of Virginia's denial of the motion to strike subclaim was either

31

factually or legally unreasonable, that Smith failed to provide any support regarding the motion for mistrial (or curative instruction), and that Smith has failed to satisfy <u>Strickland</u> for his double-jeopardy assertion, the Court RECOMMENDS that claim (c) be DENIED.

### 5.  Claim (d)

The Court now moves to claim (d), in which Smith asserts that trial counsel was ineffective for failing to impeach the Commonwealth's witness using prior inconsistent statements. Federal Petition, Facts, at 2.  The Supreme Court of Virginia denied this claim, finding that neither prong of <u>Strickland</u> was satisfied because Smith "fail[ed] to articulate the substance of the alleged conflicting testimony and fail[ed] to establish that the testimony would have been excluded if counsel had objected[23] to it."  <u>Smith I</u>, at 3.

Within the instant petition, Smith fails to articulate the substance of the alleged conflicting testimony, but in his response to Respondent's Motion to Dismiss, Smith states that "there was no evidence of threat of intimidation by [Smith] . . . in the statement Hugh Arrington gave to police."  Smith's Response, at 5. The Court notes that in Smith's state habeas petition, he appears

---

[23]The reference to an objection appears to be in response to Smith's claim in his state petition that "[t]rial court counsel Ringer failed to object to the Commonwealth's witness statements during trial being conflicting at trial for impeachment purposes." State Habeas Petition, at 7; <u>accord id.</u> at 29.

to suggest the reverse, namely, that Arrington did "alleg[e] [to police] that force, threat or intimidation was utilized by [Smith] to commit the alleged crime." State Habeas Petition, at 11. In any event, the Court notes that defense counsel did attempt to impeach Arrington using his initial statement to police. Trial Transcript, at 82. Arrington acknowledged it was his statement, but averred it was illegible and he could not recall what he had written. Transcript, at 82-84. As stated, _supra_, Smith has not provided any other statements that counsel could have used for witness impeachment, nor what options defense counsel had for further impeachment once Arrington claimed he could not read his original statement. As such, Smith has not shown that the Supreme Court of Virginia's denial of this claim was either legally or factually unreasonable. Accordingly, this Court RECOMMENDS that claim (d) be DENIED.

## IV. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Smith's petition for a writ of habeas corpus be DENIED, that Respondent's motion to dismiss be GRANTED, and that all of Smith's claims be DISMISSED WITH PREJUDICE.

Smith has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b).

2.  A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                    _____/s/_____
                                    F. Bradford Stillman
                                    United States Magistrate Judge

Norfolk, Virginia

August 8, 2006

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed

this date to the following:

Jerome A. Smith, #322301
Lawrenceville Correctional Center
1607 Planters Road
Lawrenceville, Virginia 23868
PRO SE

Leah Ann Darron, Esq.
Assistant Attorney General
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219

Fernando Galindo,
Acting Clerk of Court

By: _____
Deputy Clerk

August    , 2006